**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **HESS CONSTRUCTION COMPANY, L.L.C.** * | | **CIVIL ACTION** |
| * | | |
| **VERSUS** * | | **NO. 11-530** |
| * | | |
| **JOHNNY E. DOLLAR, ET AL.** * | | **SECTION "L"(5)** |

## ORDER & REASONS

The Court has pending before it motions to dismiss filed by Defendants Thomas Jones, Scott Bethune, Grant Davis, and Timothy Wickey (Rec. Docs. 22, 47); Defendant John C. Laird (Rec. Docs. 23, 57); and Defendants Johnny E. Dollar and Chapel Hill Aggregates, LLC (Rec. Doc. 26). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.     BACKGROUND**

This case arises indirectly out of the breach of a March 11, 2007 contract between Plaintiff Hess Construction Company, LLC ("Hess") and Defendant Chapel Hill Aggregates, LLC. Pursuant to the contract, Hess would separate, screen, and wash sand and gravel obtained from Chapel Hill Aggregates's mines in Tangipahoa Parish. Hess alleged that the contract required Chapel Hill Aggregates to provide raw material allowing production of 18,000 tons of finished material per 24-hour period, six days per week, for at least three years. The business relationship broke down and Hess ultimately filed suit in this Court alleging that Chapel Hill Aggregates breached the agreement no later than August 31, 2007 by failing to provide the required amount of material and failing to pay amounts owed under the contract. That case, Civil Action number 08-4296, was filed on August 28, 2008. Chapel Hill Aggregates was the

sole named defendant.

A jury trial in the 08-4296 case began on December 6, 2010, and lasted three days. The jury returned a verdict in favor of Plaintiff Hess and against Defendant Chapel Hill Aggregates in the amount of $1,465,194. The Court entered judgment on December 22, 2010, and denied a motion for relief from judgment and for a new trial on February 7, 2011. Chapel Hill Aggregates filed a timely notice of appeal. The United States Court of Appeals for the Fifth Circuit recently affirmed the judgment, holding that "[t]he jury could have reasonably awarded *more* than the $1,465,194 it settled on." *Hess Constr. Co., L.L.C. v. Chapel Hill Aggregates, L.L.C.*, No. 11-30244, 2012 WL 89474, at *1 (5th Cir. Jan. 10, 2012) (emphasis added).

The present case arises out of Hess's efforts to execute that judgment against Chapel Hill Aggregates. Hess alleges that some time before the end of 2007 Chapel Hill Aggregates sold all of its assets, distributed those profits to the LLC members, and ceased all business activity. Hess filed the original complaint in this case on March 7, 2011 against Chapel Hill Aggregates, LLC and the members of that LLC ("Member Defendants") seeking to collect the amount of the money judgment from the Member Defendants as well as the LLC. Specifically, Hess alleged that the distributions left Chapel Hill Aggregates insolvent in violation of Louisiana Revised Statute 12:1327, or in the alternative, Louisiana Civil Code article 2036.

All of the Defendants named in the original complaint filed motions to dismiss on the basis of peremption, standing, and service issues. After the motions to dismiss were filed, Hess filed an amended complaint adding additional factual allegations and causes of action and naming Chapel Hill LLC as an additional defendant. Chapel Hill LLC allegedly engaged in similar business activities as Chapel Hill Aggregates and was as a single business enterprise with Chapel Hill Aggregates. Also, the Member Defendants allegedly funneled the distributions they

2

received from Chapel Hill Aggregates into Chapel Hill to shift assets and defraud Hess. Defendants to the original complaint have filed renewed motions to dismiss. Chapel Hill, the new Defendant in the amended complaint, has not yet answered or filed a motion to dismiss.

Essentially, Hess alleges that after Chapel Hill Aggregates breached the gravel contract but before Hess filed suit, Chapel Hill Aggregates liquidated its assets and disbursed the profits to the Member Defendants and to Chapel Hill in order to frustrate Hess's ability to recover an eventual judgment. Hess now seeks to recoup those funds from the Member Defendants and from the allegedly related LLC.

## II. PRESENT MOTIONS

The named Defendants have filed a number of motions to dismiss the complaint and amended complaint. They contend that Hess's various causes of action fail due to peremption, lack of standing, and failure to plead with adequate specificity. Additionally, Defendants Davis, Bethune, Jones, and Wickey argue they were not timely served with the original complaint in compliance with Federal Rule of Civil Procedure 4(m).

In response, Hess argues that the claims against the Member Defendants are not prescribed or perempted because the 08-4296 breach of contract case preserved the claims or because the effect of Defendants' allegedly fraudulent conduct was not discovered until Hess attempted to enforce a liquidated judgment. Hess also responds that any service deficiencies were cured through service of the amended complaint. Finally, Hess argues that it has adequately stated a claim for fraud or imputing liability to the Member Defendants.

## III. LAW AND ANALYSIS

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re*

3

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Additionally, allegations of fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quotation omitted).

Generally, members of an LLC are not personally liable for debts or obligations incurred by the LLC.  La. Rev. Stat. § 12:1320(B) ("Except as otherwise specifically set forth in this Chapter, no member ... of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.").  Hess has asserted several causes of action under Louisiana law to pierce or bypass that default limitation of liability.  First, Hess argues that the distribution was wrongful pursuant to La. Rev. Stat. § 12:1327, which limits distributions by LLCs.  Second, Hess pleads a revocatory action pursuant to Civil Code article 2036.  Third, Plaintiff pleads an oblique action pursuant to Civil Code article 2044.  Fourth, Hess pleads fraud.  Fifth, Hess argues that the corporate veil surrounding Chapel Hill Aggregates should be pierced to impute liability to the Member Defendants or to Chapel Hill.  Sixth, Hess argues that the Defendants conducted a de facto dissolution of Chapel Hill Aggregates, making them personally liable to Hess.  Defendants have moved to dismiss all claims.

4

### A. Louisiana Revised Statute § 12:1327: Restrictions on Distributions

Louisiana Revised Statute § 12:1327 prohibits distributions from an LLC to its members under certain circumstances, including if after the distribution "[t]he limited liability company would not be able to pay its debts as they become due in the usual course of business." *Id.* at § 12:1327(A)(1). Members who knowingly or without the exercise of reasonable care assent to a distribution in violation of § 12:1327 are jointly and severally liable to the LLC for the amount of the distribution exceeding the amount that otherwise could have been distributed. La. Rev. Stat. § 12:1328(A). Hess alleges that the Member Defendants received an improper distribution that left Chapel Hill Aggregates unable to pay the amount of the judgment. Defendants argue that Hess lacks standing to bring a claim pursuant to § 1327, and also that the claim is perempted.

#### 1) Peremption

Section 12:1328(C) provides an express two-year time limit on bringing an action to hold LLC members liable to the LLC for improper distributions:

> An action to enforce liability under this section must be brought within two years from the date of which the effect of the distribution is measured under [§ 12:1327].... ***These time limits shall not be subject to suspension on any ground, nor to interruption except by timely suit.***

La. Rev. Stat. § 12:1328(C) (emphasis added). "The effect of the distribution" is measured from the date upon which it is authorized or upon the date which payment is actually made if that date is more than 120 days after authorization. La. Rev. Stat. § 12:1327(C). Although the statute does not use the word, the parties characterize this time limit as a peremptive period rather than a prescriptive period because it may not be suspended or interrupted. *See* La. Civ. Code art. 3461 ("Peremption may not be renounced, interrupted, or suspended."). Peremptive statutes should be

"strictly construed against peremption and in favor of the claim." *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1083 (La. 2009). Out of several possible interpretations of a peremptive statute, "the one that maintains the enforcement of the claim or action, rather than the one that bars enforcement should be adopted." *Id.*

According to the original and amended complaints, Chapel Hill Aggregates made the disputed distributions to its members "towards the end of 2007." (Rec. Doc. 1 at 3). Two years from "the end of 2007" is, at the latest, December 31, 2009. The original complaint in this case was filed on March 7, 2011. Therefore, Defendants argue that the claim is perempted on its face pursuant to § 12:1328(C) because this suit was filed more than two years after the effect of the distribution.

In response, Plaintiff admits that Defendants offer a reasonable interpretation of § 12:1328, but that out of multiple possible constructions, "the one that maintains the enforcement of the claim or action, rather than the one that bars enforcement should be adopted." *Rando*, 16 So. 3d at 1083. Hess argues that "[a] more reasonable interpretation [of § 1328(C)] ... is that 'timely suit' can mean any suit against any solidary obligor for the debt in question." (Rec. Doc. 29 at 4). Hess cites Civil Code article 1799, which states that "interruption of prescription against one solidary obligor is effective against all solidary obligors." La. Civ. Code art. 1799; *see also* La. Civ. Code art. 3503. Therefore, Hess argues, the member Defendants are solidarily liable with Chapel Hill Aggregates and that the original contract suit against Chapel Hill Aggregates on August 28, 2008, was a "timely suit" that interrupted § 12:1328(C).

Defendants reply that Plaintiff's interpretation is absurd and that filing suit against an LLC for breach of contract should not interrupt prescription or peremption with respect to an entirely distinct cause of action to enforce an eventual judgment against the LLC by recovering

6

from the members of that LLC.[1] Defendants' theory is that "timely suit" means only the suit pursuant to § 12:1328(A) to enforce liability against LLC members.

The peremption portion of § 12:1328(C) has not been interpreted by any court, and thus neither party cites any direct authority regarding what kind of "timely suit" will suspend peremption on a claim for an improper distribution. Admittedly, § 12:1328(C) does not use the word "peremption" but it does state that it is "not subject to suspension on any ground nor to interruption *except by timely suit*." Defendant's proffered interpretation is reasonable, even it if makes the "except by timely suit" language somewhat redundant.[2]

Furthermore, Hess's proposed interpretation of § 1328(C) is unconvincing. That interpretation would require a much broader reading of the "except by timely suit" clause. Certainly, nothing in the statute suggests that a breach of contract suit filed by a creditor against an LLC will interrupt peremption as to any potential future suit to impose liability on the LLC members for improper distributions within the two years prior to the original suit, no matter how unrelated it was to the members themselves. The "timely suit" referred to in § 1328(C) is best read to mean an timely suit on an "action to enforce liability *under this Section*."

But even if timely suit against one obligor could interrupt the § 12:1328(C) peremptive period with respect to solidary co-obligors, that does not avail Hess here. It does not appear that Chapel Hill Aggregates is solidarily liable with the Member Defendants, at least with respect to "an action to enforce liability under" § 1328(C). "An obligation is solidary for the obligors

---

[1]Defendants also argue that § 12:1328(C) is peremptive and therefore cannot be interrupted at all, but the statute clearly contemplates some kind of interruption, albeit only "interrupt[ion] ... by timely suit."

[2]It should be unnecessary to say that timely filing a suit within a two-year peremptive period stops that peremptive period from running.

7

when each obligor is liable for the whole performance." La. Civ. Code art. 1794. Chapel Hill Aggregates owes Hess $1,465,194 for breach of a contract. If the member Defendants owe anything pursuant to § 1328, they are "jointly and severally liable *to the limited liability company*" for the amount of the improper distribution. La. Rev. Stat. § 12:1328(A) (emphasis added). Thus, for the purposes of §§ 1327 and 1328, Chapel Hill Aggregates owes Hess on the contract debt and the Member Defendants owe Chapel Hill Aggregates some portion of the distributions they received. The obligations are different. Hess has not cited any apposite authority melding such disparate obligations into solidary liability for the purpose of suspending peremption or prescription.

In short, the statute requires that an action to enforce liability against the members of an LLC for a wrongful distribution be brought within two years of the authorization or payment of the distribution. La. Rev. Stat. §§ 12:1327(C), 12:1328(C). Hess filed its claim for wrongful distribution more than two years after the alleged date of the effect of the distribution. The claim is perempted. In light of the Court's conclusion that the claim is perempted, the Court need not reach the issue of standing.

### B. Civil Code article 2036: Revocatory Action

Hess also brings a claim pursuant to Civil Code article 2036, which allows an obligee to bring a revocatory action to annul an act or failure to an act by an obligor that causes or increases the obligor's insolvency. La. Civ. Code art. 2036. Civil Code article 2041 defines the period in which a revocatory action must be brought:

> The action of the obligee must be brought within one year from the time he learned or should have learned of the act, or the result of the failure to act, of the obligor that the obligee seeks to annul, but never after three years from the date of that act or result.

Although article 2041 does not use the words "prescription" or "peremption," there is authority interpreting the "never after three years" clause as creating a peremptive period. *See Farm Credit Bank of Tex. v. Vallee*, 148 B.R. 1021, 1023 n.1 (W.D. La. 1992) ("The law, jurisprudence, and comments to article 2041 lead to no other conclusion that the one-year term is a prescriptive period ***and the three-year period peremptive***.") (emphasis added).

Defendants argue that according to the pleadings, the distributions that allegedly looted Chapel Hill Aggregates were made no later than the end of 2007. But Hess filed suit in March, 2011, more than three years after December 31, 2007. Therefore, Defendants argue that Hess failed to bring the revocatory action within the three-year peremptive period set by article 2041 and that the claim is perempted.

In response, Hess argues that his revocatory action is timely because it was brought within one year of learning of the "result" of the alleged improper distributions. That is, Hess argues that it did not have a liquidated verdict and judgment until December 22, 2010, and thus the result of the alleged improper distributions did not manifest until execution on the judgment was attempted.

In reply, Defendants cite the comments to article 2041 which state that "[s]ince the revised articles on revocatory action have been drafted to cover unliquidated claims, the 'date of judgment' is not a relevant starting point for determining when prescription has run." La. Civ. Code art. 2041 cmt. b. Defendants also argue that, according to the plain language of article 2041, the three-year peremption clock expires three years from the time of the alleged act or three years from the result of the alleged failure to act–not, as Hess has characterized it, three years from the result of an action. Because Hess has alleged an affirmative act (the improper distribution) rather than a failure to act, the first prong applies and perempts the claim because

9

suit was filed more than three years after the distributions occurred.

The Court agrees that the three-year limitation imposed by article 2041 is peremptive, because a claim may *never* be brought more than three years from the date of that act or result. The issue is what event triggers the running of the three-year peremptive period. A cursory reading might suggest, as Hess argues, that the peremptive period is "three years from the date of that act or result," meaning the result *of that act*. But read as a whole the article does not support that interpretation.

The first clause of article 2041 requires suit to be brought within one year of the obligee learning of "the act, or the result of the failure to act" that is challenged. La. Civ. Code art. 2041. The second clause states that suit may never be brought "after three years from the date of that act or result." *Id.* The clauses are found in the same sentence and should be read in harmony. Thus, the three-year peremptive limit is properly read as precluding suit three years after "the act, or the result of the failure to act." Indeed, this is the interpretation suggested by comment a to the article. *See* La. Civ. Code art. 2041 cmt. a ("Nevertheless, **to protect the security of transactions**, the revocatory action may not be brought after three years from the date of the act **or the result of the failure to act** of the obligor.") (emphasis added). Moreover, if Hess were correct that the article 2041 peremptory period did not begin running until a judgment creditor finds itself unable to execute on a judgment, there could be essentially an open-ended time to file such a suit and "the security of transactions" would not be protected, in contravention of the purpose of the article. *See id.* Accordingly, Plaintiff's claim for a revocatory action is also perempted.

    C.    **Civil Code article 2044: Oblique Action**

Hess has also invoked Civil Code article 2044, which permits an obligee to assert certain

rights of an insolvent obligor:

> If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor. For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.

La. Civ. Code art. 2044. However, the three-year peremptive period imposed by article 2041 with respect to revocatory actions also applies to oblique actions, which are created by the same chapter of the Civil Code. *See Nicholson Mgmt. & Consultants, Inc. v. Bergman*, 681 So. 2d 471, 475-76 (La. App. 1996). Thus, the oblique action is perempted for the same reason as the revocatory action.

### D. Fraud

Hess also asserts that Defendants' conduct in rendering Chapel Hill Aggregates constitutes fraud. Hess does not clearly articulate the legal foundation for the fraud claim, although the briefing points towards Civil Code articles 1953 or 2315. "To recover under La. Civ. Code art. 1953, plaintiffs must demonstrate the existence of a contract." *See Pedalino v. Pitre*, 431 so. 2d 20, 21 (La. App. 1 Cir. 1983). Hess has not alleged the existence of a contract between it and any party other than Chapel Hill Aggregates. Thus, article 1953 is the wrong framework for analyzing Hess's fraud claims. An alternative fraud-based claim is "delictual fraud pursuant to Civil Code article 2315." *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993). "The elements of this cause of action are: (1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury." *Id.* (quotation omitted). As noted above, a party alleging fraud must "set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey*, 540 F.3d at 339 (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

Defendants argue that the fraud claim is not pleaded with the factual particularity required by Rule 9(b).  According to Defendants, Hess has failed to identify any specific fraudulent statement directed towards Hess, or any fraudulent omission in violation of a duty to disclose, and thus the fraud claim fails as a matter of law.  Therefore, the conclusory allegations of fraud, which do not identify any fraudulent statements or misrepresentations, or who made them, should be dismissed.

Hess responds that it has set forth the "who" (the Defendant Members), the "what" (improper distributions), the "when" (some time in 2007), as well as the "where" and "why" of the scheme to render Chapel Hill Aggregates insolvent.  Therefore, Hess contends that it has adequately pleaded factual material stating a fraud claim and satisfied Rule 9(b).

Although the complaint and amended complaint are not conclusory, they nonetheless fail to articulate a fraud claim to the degree of specificity required by Rule 9(b).  There are no allegations of any specific representations or misrepresentations made to Hess by any of the Member Defendants.  Thus, Hess has not specified the statements contended to be fraudulent, identified the speaker, or stated when and where the statements were made.  *See Dorsey*, 540 F.3d at 339.  The motion to dismiss is granted as to the fraud claim.  However, because as set forth below the case will proceed as to all Defendants, the fraud claim is dismissed without prejudice.  If Hess is able to articulate the fraud claims to the requisite degree of specificity after an opportunity for discovery, it may seek leave to amend the complaint.

### E.     Piercing the Corporate Veil, and Other Theories of Imputed Liability

Hess also argues that Chapel Hill Aggregates's liability on the underlying gravel contract should be imputed to the Member Defendants and to Chapel Hill, despite the general rule of limited LLC liability.  Louisiana allows veil-piercing of an LLC to hold members liable for the

LLC's debts under certain circumstances. *See, e.g.*, *ORX Res., Inc. v. MBW Exploration, L.L.C.*, Nos. 2009-0662, 2009-0859, at p. 6-7 (La. App. 4 Cir. 2/10/10); 32 So. 3d 931, 935 (quotation omitted). "In order properly to disregard the corporate entity, one of the primary components which justifies piercing the veil is often present: to prevent the use of the corporate form in the defrauding of creditors." *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1169 (La. 1991). Louisiana also recognizes a single-business-enterprise doctrine, which is "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 2007-2116, at p. 3 n. 2 (La. 10/14/08); 994 So. 2d 125, 1266 n.2. "Generally, under the doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Id.*

Defendants argue that neither doctrine is available because both are merely equitable in nature rather than independent causes of action. According to Defendants, each theory requires some underlying liability to impute to an LLC member or to an allegedly affiliated business entity; because the § 1328, revocatory, oblique, and fraud claims fail, Defendants argue that there is no viable liability to impute. Hess responds that the underlying liability is the $1,465,194 Judgment owed to it by Chapel Hill Aggregates, and that it has sufficiently pleaded facts which would warrant piercing the corporate veil to impute that liability to the Member Defendants or to Chapel Hill.

Hess has the better of this argument. Chapel Hill Aggregates owes Hess $1,465,194 which is the requisite underlying liability that Louisiana law may, under appropriate circumstances, impute to other parties. Hess sufficiently states a plausible claim that the corporate-veil-piercing and single-business-enterprise doctrines apply to make the Member Defendants and Chapel Hill, LLC liable along with Chapel Hill Aggregates for that underlying

13

debt. The motion to dismiss is denied as to these claims.[3]

### F. De Facto Dissolution

In its amended complaint, Hess also states that the conduct of Chapel Hill Aggregates and its members constitute a de facto dissolution of the LLC not in accord with the requirements of Louisiana law. *See* La. Rev. Stat. §§ 12:1334, 1338. In their renewed motions to dismiss, Defendants did not expressly address this claim. Accordingly, the legal viability of the theory has not been presented to the Court and Plaintiff is entitled to proceed on this theory as well.

### G. Service

Initially, Defendants Jones, Bethune, Davis, and Wickey moved to dismiss pursuant to Rule 12(b)(5) on the grounds that they were not timely and properly served with the summons in accordance with Rule 4(e) or (m). Dismissal for untimely service under Rule 4(m) mandates only dismissal without prejudice and the Court can instead "order that service be made within a specific time." Although service of summons and the original complaint may not have been accomplished correctly, Plaintiff subsequently sought leave and filed an amended complaint, which has been properly served on Jones, Bethune, Davis, and Wickey. Accordingly, any deficiency has been cured and the issues surrounding service of the original complaint are not grounds for dismissal.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' motions to dismiss (Rec.

---

[3]Louisiana law also permits veil-piercing even in the absence of fraud on the part of a shareholder or member, if certain factors are present. *See Cashman Scrap & Salvage, LLC v. Bois d'Arc Energy, Inc.*, 413 F. App'x 758, 763 (5th Cir. 2011). Thus, although the Court has dismissed the fraud claims against the individual Member Defendants, they remain proper defendants with respect to the claim that the LLC veil should be pierced and Chapel Hill Aggregates's liability should be imputed to them. Accordingly, the Member Defendants remain in the case.

Docs. 22, 23, 26, 47, 57) are GRANTED IN PART and DENIED IN PART. The motions are GRANTED as to Hess's § 12:1328 claim, revocatory claim, and oblique action claim, which are DISMISSED WITH PREJUDICE. The motions are GRANTED as to Plaintiff's fraud claims against all Defendants, which are DISMISSED WITHOUT PREJUDICE. The motions are denied as to Plaintiff's corporate-veil-piercing, single-business-enterprise, and de facto dissolution claims, which may proceed as to the Member Defendants and Chapel Hill Aggregates, and denied as to the improper service claim.

New Orleans, Louisiana, this 24th day of January, 2012.

_____
UNITED STATES DISTRICT JUDGE